STATE of Minnesota, Respondent,

v.

James Arthur CHAREST, Appellant.

No. C3-82-725, C6-82-749.

Supreme Court of Minnesota.

July 22, 1983.

Delaney, Thompson & Solum, Peter J. Thompson and John W. Lundquist, Minneapolis, for appellant.

Hubert H. Humphrey III, Atty. Gen., St. Paul, Robert W. Johnson, Anoka County Atty., J. Diane Savage and Robert A. Stanich, Asst. County Attys., Anoka, John MacGibbon, Sherburne County Atty., and Robert Danforth, Asst. County Atty., Elk River, for respondent.

PETERSON, Justice.

Between February and May 1981, ten complaints issued from Anoka and Sherburne Counties [1] against appellant James Arthur Charest, charging him with twenty-four counts of receiving stolen property and felonious theft in connection with a so-called "chop shop" operation, by which vehicle identification numbers were removed from wrecked vehicles and transferred to stolen vehicles, which were then resold.

On August 18, 1981, Charest pled guilty to the "receiving stolen property" count of each complaint, pursuant to a plea bargain which provided that the remaining counts of the complaints would be dismissed and no other charges against Charest of which the Anoka County authorities were aware would be brought. As to sentencing, the Sherburne County violation would be handled according to the Minnesota Sentencing Guidelines, but as to the Anoka County violations, the county attorney reserved the right to request an upward deviation. During the course of the plea hearing, Charest was advised of his rights and waived them. He was then questioned by his counsel and described each offense. He was informed of the range of sentences which the court could impose, and he stated he understood them. The trial court accepted the pleas and deferred sentencing until a presentence investigation report was prepared.

On November 2, 1981, before sentence had been imposed, the County of Anoka subpoenaed Charest to testify against Dennis May, an accomplice of Charest in the chop shop operation, who was charged in connection with one of the vehicles which had not been itemized as a count in the ten complaints previously filed against Charest. Upon Charest's invocation of his right against self-incrimination, the prosecutor moved for an order granting transactional immunity to Charest and compelling his

---

1. One complaint issued from Sherburne County, all others issued from Anoka County. The    issues are identical in both appeals.

testimony;[2] the judge presiding at May's trial (the same judge who had accepted Charest's pleas of guilty) convened a hearing on the matter at which the scope of the proposed immunity was discussed. Although the conversation was not as clear as might be hoped, our close review of the record persuades us that all parties understood the court to have ordered that Charest testify at May's trial about the vehicle at issue in the May transaction. The trial court, by stating the immunity was "from the plea forward," put Charest on notice that no immunity was granted with respect to transactions to which he had earlier pleaded guilty. After the court approved the immunity order, the prosecutor requested that police investigators be permitted to interview Charest prior to May's trial to learn what evidence he could provide against May. Charest's attorney stated he had no objection to the questioning insofar as the inquiry was covered by the order.

The parties, by affidavits, dispute the scope of the questioning that followed by the police investigators. The state maintains that none of the questions related to the ten counts to which Charest had earlier pleaded guilty, while Charest insists that he answered questions regarding some vehicles which were the subjects of his pleas. What is clear is that Charest remembered little or nothing regarding May, and the prosecutor dismissed the charges against May for lack of evidence sufficient to proceed to trial. Shortly thereafter, Charest moved for dismissal of all charges, including the ten counts to which he had pleaded guilty, on the ground that the transactional immunity order forbade imposing sentence upon him. In support of the motion, Charest attached affidavits of counsel generally recounting for the trial judge the questions asked of Charest and the answers made by him. Charest also moved to withdraw his guilty pleas. The trial court denied both motions.

Charest had a criminal history score of zero (except for the ten counts) which, for a level 6 offense, translated to a presumptive 21-month stayed sentence under the Minnesota Sentencing Guidelines. As to the Sherburne county offense, the trial court sentenced Charest to a term of 42 months' imprisonment, all of which was stayed, and a fine of $1,500. As to each Anoka County offense, Charest was sentenced to 42 months and payment of a $1,000 fine. The sentences were stayed, conditional on Charest's making restitution (the amount of restitution to be credited against the fines) and on Charest's serving 1 year in the Anoka County jail subject to the work release provisions of the Huber law. All remaining counts of each complaint were dismissed. Charest then brought this appeal.

We begin our analysis with a careful reading of the transactional immunity statute, Minn.Stat. § 609.09, subd. 1 (1980), which provides:

Subdivision 1. In any criminal proceeding, paternity proceeding, or proceeding in juvenile court, if a person refuses to answer a question or produce evidence of any other kind on the ground that he may be incriminated thereby, and if the prosecuting attorney, in writing, requests a judge of the court in which the proceeding is pending to order that person to answer the question or produce the evidence, the judge, after notice to the witness and hearing, shall so order if he finds that to do so would not be contrary to the public interest and would not expose the witness to prosecution in another state or in the federal courts, and that person shall comply with the order.

After complying, and if, but for this section, he would have been privileged to withhold the answer given or the evidence produced by him, *he shall not be prosecuted or subject to penalty or forfeiture for or on account of any transaction,*

2. All parties, including the trial judge, were aware the immunity statute had been amended to provide only use and derivative use immunity, *see* Minn.Stat. § 609.09, subd. 1 (1982), but all parties believed the new statute had not become effective in time to apply to the case.

In light of our disposition, we need not determine the correctness of this belief. For purposes of analysis we shall proceed on the assumption that Charest received transactional immunity.

*matter or thing concerning which, in accordance with the order, he gave, answered, or produced evidence,* but he may be prosecuted or subjected to penalty or forfeiture for any perjury, false swearing or contempt committed in answering, or in failing to answer, or in producing, or failing to produce, evidence in accordance with the order.

(emphasis added). The italicized language makes clear that immunity exists only as to the "transaction, matter or thing" concerning which the witness has been compelled to speak. Failure to meet this prerequisite would preclude existence of the immunity.

■ Charest would have us construe the entire chop shop operation to be one transaction despite the fact it stretched over a year, involved thirty vehicles, and injured numerous buyers who were defrauded in the purchase of the vehicles. Based on this expansive definition of "transaction," the argument is that Charest's statements related to the "transaction, matter or thing" for which he was sentenced, in violation of the terms of the immunity order. Neither of the parties have cited any cases interpreting the phrase "transaction, matter or thing." We hold that the processing of each vehicle gave rise to a single, separate transaction. As to each processed vehicle, a vehicle identification number was taken from a wrecked automobile and transferred to a stolen vehicle, a title was wrongfully signed, a buyer was procured, and a sum of money changed hands. As a result, we conclude that the trial court properly issued an order granting immunity as to the May vehicle without granting immunity as to

the ten vehicles about which Charest had already pleaded guilty.

■ The trial court's questions about the scope of the order were sufficient to put Charest on notice that only immunity as to the May vehicle was intended, and to put the burden on Charest to ask the court for immunity as to the ten vehicles, if such was desired. Charest's counsel, present at the immunity hearing, consented to Charest being interviewed about the May transaction; the narrow objection now raised on appeal is that Charest, during the interviews at which his counsel was present, was asked and answered questions which went beyond the May transaction. This objection is meritless. At the point that Charest was asked a question which he believed related to the ten vehicles,[3] the proper course would have been to refuse to answer on self-incrimination grounds; to the extent Charest proceeded to answer without seeking additional immunity, he must be deemed to have waived any right against self incrimination which may have existed.

Although unnecessary to decision, we note that Charest was in no way prejudiced by any of the questions asked by the police investigators. The factual basis for Charest's guilty pleas was established by Charest himself at the plea hearing and during the presentence investigation. The sentencing court would never have known of the contents of Charest's statements at the police interview had Charest himself not brought them to the court's attention. These statements were used for no other purpose. Moreover, under the authority of *State v. Hernandez,* 311 N.W.2d 478 (Minn.1981), the

---

**3.** We do not by this statement mean to imply that Charest was in fact asked any such question. Under our analysis we do not need to reach this issue.

We further note two additional considerations. First, when a court requires testimony pursuant to an order of immunity outside the courtroom, better practice would dictate that the court's order provide some means of preserving a record—either stenographically or by recording. Otherwise, we are faced with the difficult problem, as occurred in this case, of reconstructing a record of the statements given.

Secondly, when a court issues an order of immunity, better practice would also dictate a very precise wording as to the scope of immunity. Upon review of the record in this case, we are confident that immunity was limited to the May transaction. However, a carefully worded immunity order will guarantee that witnesses are informed of what statements are covered by an order, in order to preserve their constitutional right to assert the privilege against self-incrimination.

trial court could have imposed a sentence much greater than the lenient sentence which was imposed, since the offenses were "separate and distinct offenses which were not part of a single behavioral incident or course of conduct and which did not involve the same victims * * *." 311 N.W.2d at 481. We find nothing in the record to indicate the sentence was in anyway influenced by Charest's statements to police investigators just prior to the scheduled trial of Dennis May.

Affirmed.